CHARLES M. DYKE (CA State Bar No. 183900)
cdyke@nixonpeabody.com
GREGORY E. SCHOPF (CA State Bar No. 122862)
gschopf@nixonpeabody.com
MATTHEW J. FRANKEL (CA State Bar No. 256633)
mfrankel@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300

Attorneys for Plaintiff
HERTZ EQUIPMENT RENTAL COMPANY

FILED
2010 NOV -2 A 10:30
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

10 4953

LB

| | |
|---|---|
| HERTZ EQUIPMENT RENTAL COMPANY, a Delaware corporation,<br><br>              Plaintiff,<br><br>    v.<br><br>RAMON USEDA, FRED KICENSKI, and Does 1 through 20,<br><br>              Defendants. | Case No.:<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TEMPORARY RESTRAINING ORDER, (2) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      November 2, 2010<br>Time:    ___:___ _.m.<br>Dept.:   _____<br>Judge:  _____<br><br>Date of Filing:  November 2, 2010<br>Trial Date:     None set |

1

2

**NOTICE OF MOTION AND MOTION, *EX PARTE,* FOR (1) TEMPORARY RESTRAINING ORDER, (2) OSC RE PRELIMINARY INJUNCTION, AND (3) EXPEDITED DISCOVERY**

3

TO DEFENDANTS RAMON USEDA AND FRED KICENSKI:

4

PLEASE TAKE NOTICE that on November 2, 2010, at 9:00 a.m., in the United States

5

District Court for the Northern District of California, located at 450 Golden Gate Avenue, San

6

Francisco, California, Plaintiff Hertz Equipment Rental Corporation ("HERC") shall file with the

7

Court its Complaint for Theft of Trade Secrets, Breach of Contract, Breach of Duty of Loyalty,

8

Unfair Competition, Replevin and Conversion against Defendants Ramon Useda ("Useda") and Fred

9

Kicenski ("Kicenski").

10

PLEASE TAKE FURTHER NOTICE that on November 2, 2010, at 9:00 a.m., in the United

11

States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, CA,

12

Plaintiff HERC also shall file with the Court this *Ex Parte* Motion, along with supporting papers, and

13

at that time or as soon thereafter as the Clerk's Office assigns this case to a judge and the matter may

14

be heard, appear in person, through the undersigned counsel, to ask the Court under Rule 65 of the

15

Federal Rules of Civil Procedure, under California Civil Code section 3426.2, and under California

16

Business and Professions Code section 17203 to issue (1) a temporary restraining order, (2) an order

17

to show cause why a preliminary injunction should not issue, and (3) an order granting expedited

18

discovery against Defendants Useda and Kicenski.

19

PLEASE TAKE FURTHER NOTICE that if Defendants Useda and Kicenski wish to oppose

20

this *Ex Parte* Motion or the granting of any of the relief requested herein, then Useda and Kicenski

21

may appear, either in person or through counsel, on November 2, 2010, at 9:00 a.m., in the United

22

States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San

23

Francisco, California.

24

HERC seeks immediate injunctive relief prohibiting Useda and Kicenski from any further

25

acquisition, use, or disclosure of HERC's trade secrets and confidential, proprietary information,

26

including the pricing, customer, and employee compensation information that Useda and Kicenski

27

took with them when they left HERC to join competitor Sunstate Equipment Co., LLC, and from

28

engaging in any further breaches of duty or acts of unfair competition in connection therewith.

1

1    HERC also seeks an order granting expedited discovery in advance of the preliminary injunction

2    hearing on these matters.

3         Through this Motion, HERC requests a temporary restraining order ("TRO") and an order to

4    show cause why preliminary injunction should not issue:

5         1.     directing Useda to deliver immediately to HERC all copies of documents, whether in

6    paper form or stored in an electronic medium, containing HERC confidential information that Useda

7    currently possesses or has in his custody or control, including without limitation all such documents

8    that contain HERC pricing information; and

9         2.     directing Kicenski to deliver immediately to HERC all copies of documents, whether

10   in paper form or stored in an electronic medium, containing HERC confidential information that

11   Kicenski currently possesses or has in his custody or control, including but not limited to all such

12   documents that contain HERC employee compensation information; and

13        3.     directing Useda and Kicenski to take all necessary steps to preserve documents, data,

14   tangible things, and other materials relating to this action, including without limitation emails and

15   paper and electronic documents, including any current or archived electronic logs, metadata, and

16   directories; and

17        4.     restraining and enjoining Useda and Kicenski from directly or indirectly violating the

18   terms of their Confidentiality Agreements with HERC; and

19        5.     restraining and enjoining Useda and Kicenski from directly or indirectly accessing,

20   disclosing, making available to any person or entity, or using any HERC confidential and/or trade

21   secret information that Useda and Kicenski obtained while employed by HERC, including without

22   limitation HERC pricing information that Useda obtained while employed by HERC, information

23   setting forth the requirements of any HERC customer that Useda obtained while employed by HERC,

24   and information setting forth the compensation that HERC pays or has paid to its employees; and

25        6.     restraining and enjoining Useda and Kicenski from directly or indirectly altering,

26   destroying or disposing of any evidence, in any form, relating to this action, including without

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TRO; (2) OSC RE PRELIMINARY      13217226.1
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES

1 limitation emails and paper and electronic documents, including current or archived electronic logs,

2 metadata, and directories.

3 Pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, HERC also applies for an

4 order allowing expedited but limited discovery consisting of discrete interrogatories, document

5 requests, depositions, and document subpoenas in the forms attached as Exhibits A through H to the

6 accompanying Declaration of Matthew J. Frankel. HERC seeks verified responses and document

7 production no later than November 9, 2010, with depositions of Defendants Useda and Kicenski to be

8 completed by November 11 and 12, 2010, respectively. HERC's application for expedited discovery

9 is necessary to discover the extent of the misappropriation and resulting harm, to prevent further

10 harm, and to adequately prepare for the preliminary injunction hearing.

11 This Motion is made on the following grounds:

12 1. HERC will be irreparably harmed if Useda and Kicenski are not enjoined from

13 disclosure and use of HERC's trade secrets and confidential, proprietary information. HERC is likely

14 to succeed on the merits of its claims, and legal remedies are inadequate to compensate for the

15 injuries that Useda and Kicenski will cause through their unlawful actions. Further, the balance of

16 harms to HERC on the one hand, and to Useda and Kicenski on the other hand, as well as the public

17 interest, weigh in favor of granting injunctive relief; and

18 2. HERC has not made any previous application for similar relief.

19 HERC's Motion is based upon this Notice of Motion and Motion, *Ex Parte*; the

20 accompanying Memorandum of Points and Authorities; the supporting Declarations of Mark Hobson,

21 James Herlitz, and Matthew J. Frankel, and the exhibits thereto; HERC's Complaint for Theft of

22 Trade Secrets, Breach of Contract, Breach of Duty of Loyalty, Unfair Competition, Replevin, and

23 Conversion; the [Proposed] Order Granting Plaintiff's Motion for (1) Temporary Restraining Order,

24 (2) Order to Show Cause re Preliminary Injunction, and (3) Expedited Discovery as to Defendant

25 Ramon Useda; the [Proposed] Order Granting Plaintiff's Motion for (1) Temporary Restraining

26 Order, (2) Order to Show Cause re Preliminary Injunction, and (3) Expedited Discovery as to

27 Defendant Fred Kicenski; Plaintiff's Administrative Motion to Seal Exhibits to Declaration of Mark

28

1  Hobson; Plaintiff's [Proposed] Order Granting Administrative Motion to Seal Exhibits; and such

2  other evidence and argument as may be presented to the Court at hearing.

3  DATED: November 2, 2010                          Respectfully submitted,

4                                                    NIXON PEABODY LLP

5

6                                              By:
                                                    Charles M. Dyke
7                                                   Attorneys for Plaintiff
                                                    HERTZ EQUIPMENT RENTAL
8                                                   CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS & AUTHORITIES ........................................................................... 1

I.  PRELIMINARY STATEMENT ............................................................................................. 1

II.  FACTS ................................................................................................................................... 3

    A.  HERC's Business Relies upon the Confidentiality of Trade Secrets and Customer Information, which HERC Takes Reasonable Measures to Protect. ..................................................................................................................... 3

    B.  Useda and Kicenski Are Subject to Valid and Binding Agreements with HERC Prohibiting Disclosure or Use of HERC's Confidential and Trade Secret Information. ........................................................................................... 4

    C.  Useda Has Taken HERC's Confidential Information and Trade Secrets. ..................... 6

    D.  Kicenski Has Used HERC's Confidential Information and Trade Secrets. ................................................................................................................. 8

III.  ARGUMENT ......................................................................................................................... 9

    A.  Useda's and Kicenski's Breaches of Their Contractual Obligations and Their Violations of the Uniform Trade Secret Act and the Unfair Competition Law Entitle HERC to Injunctive Relief as a Matter of Law. ......................................................................................................................... 9

    B.  HERC is Likely to Succeed on the Merits of Its Trade Secret Misappropriation Claim. ............................................................................................ 10

        1.  HERC's Customer Information is a Protectable Trade Secret. ........................ 11

        2.  HERC's Pricing Information Is a Protectable Trade Secret. ............................ 12

        3.  HERC's Employee Compensation Information is a Protectable Trade Secret. ................................................................................................... 12

        4.  HERC Took Reasonable Measures to Protect the Confidentiality of Its Trade Secrets. ............................................................... 13

        5.  Useda Misappropriated HERC's Trade Secrets. .............................................. 14

        6.  Kicenski Misappropriated HERC's Trade Secrets. .......................................... 14

    C.  HERC Will Likely Prevail on Its Breach of Contract Claim. ....................................... 15

    D.  HERC Will Likely Prevail on its Unfair Competition Claim. ...................................... 16

    E.  HERC Will Suffer Irreparable Injury in the Absence of an Injunction. ....................... 16

    F.  The Balance of Hardships Tips Decidedly in Favor of Granting TROs. ...................... 17

i

G.   Granting the Requested TROs Would Advance the Public Interest. ........................... 18

H.   Limited Expedited Discovery Is Necessary to Determine the Full Scope of Useda's and Kicenski's Misconduct and the Resulting Harm in Advance of the Preliminary Injunction Hearing. ......................................................... 18

I.   The Court Should Include Document Preservation Orders in the Proposed TROs. ....................................................................................................... 21

J.   A Bond Is Not Required................................................................................................ 23

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TRO; (2) OSC RE PRELIMINARY          13217226.1
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*ABT, Inc. v. Juszczyk*
    2010 U.S. Dist. LEXIS 91613 (D.N.C. 2010) ........................................................ 22

*Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*
    2008 U.S. Dist. LEXIS 83076 (D.N.J. Oct. 17, 2008) ............................................. 9

*Bank of Am., N.A. v. Lee*
    2008 U.S. Dist. LEXIS 110410 (C.D. Cal. Sept. 22, 2008) .................................... 13

*Bass v. Richardson*
    338 F. Supp. 478 (S.D.N.Y. 1971) ........................................................................ 23

*Clark v. Bunker*
    453 F.2d 1006 (9th Cir. 1972) ............................................................................... 14

*Droeger v Welsh Sporting Goods Corp.*
    541 F.2d 790 (9th Cir 1976) .................................................................................. 14

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*
    569 F. Supp. 2d 929 (N.D. Cal. 2008) ................................................................... 15

*Gable-Leigh, Inc. v. North Am. Miss*
    2001 U.S. Dist. LEXIS 25614 (C.D. Cal. Apr. 9, 2001) ........................................ 18

*Gallagher Benefits Services, Inc. v. De La Torre*
    2007 U.S. Dist. LEXIS 87139 (N.D. Cal. Nov. 20, 2007) ...................................... 16

*Grooms v. Legge*
    2009 U.S. Dist. LEXIS 21456 (S.D. Cal. Mar. 17, 2009) ...................................... 20

*Hollingsworth Solderless Terminal Co. v. Turley*
    622 F.2d 1324 (9th Cir.1980) ................................................................................ 11

*Hypro, LLC v. Reser*
    2004 U.S. Dist. LEXIS 25191 (D. Minn. 2004) ..................................................... 22

*Inter-Tel (Del.), Inc. v. Fulton Communs. Tel. Co.*
    2007 U.S. Dist. LEXIS 43219 (D. Ariz. June 12, 2007) .......................................... 9

*Interbake Foods, L.L.C. v. Tomasiello*
    461 F. Supp. 2d 943 (N.D. Iowa 2006) ................................................................. 23

*JDS Uniphase Corp. v. Jennings*
    473 F. Supp. 2d 697 (E.D. Va. 2007) .................................................................... 15

iii

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TRO; (2) OSC RE PRELIMINARY
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES

13217226.1

*Jorgensen v. Cassiday*
320 F.3d 906 (9th Cir. 2003)............................................................................................ 23, 24

*KLA-Tencor Corp. v. Murphy*
2010 U.S. Dist. LEXIS 45932 (N.D. Cal. May 11, 2010) ................................................ 20, 22

*Leatt Corp. v. Innovative Safety Tech.*
LLC, 2010 U.S. Dist. LEXIS 71362 (S.D. Cal. July 15, 2010) ............................................ 15

*MAI Sys. Corp. v. Peak Computer*
1992 U.S. Dist. LEXIS 21829 (C.D. Cal. Apr. 15, 1992)...................................................... 20

*MAI Systems Corp. v. Peak Computer, Inc.*
991 F.2d 511 (9th Cir.1993)................................................................................................. 20

*Markovits v. Venture Info Capital, Inc.*
129 F.Supp.2d 647 (S.D.N.Y. 2001)..................................................................................... 17

*Matek v. Murat*
862 F.2d 720 (9th Cir. 1988)................................................................................................ 23

*Merck & Co. v. Lyon*
941 F. Supp. 1443 (M.D.N.C. 1996)..................................................................................... 23

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*
2001 U.S. Dist. LEXIS 3248 (C.D. Cal. Feb. 2, 2001)................................................... 17, 18

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*
2010 U.S. Dist. LEXIS 92178 (E.D. Wash. July 20, 2010).................................................. 12

*North Atl. Instruments, Inc. v. Haber*
188 F.3d 38 (2d Cir. 1999).................................................................................................. 16

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*
2007 U.S. Dist. LEXIS 86305 (N.D. Cal. Nov. 15, 2007)..................................................... 15

*PepsiCo, Inc. v. Redmond*
1996 WL 3965 (N.D. Ill. Jan. 2, 1996) ................................................................................ 12

*Phoenix Techs. Ltd. v. DeviceVM*
2009 U.S. Dist. LEXIS 114996, 2009 WL 4723400 ............................................................ 15

*Physicians Interactive v. Lathian Sys.*
2003 U.S. Dist. LEXIS 22868 (E.D. Va. Dec. 5, 2003)........................................................ 20

*Powelton Civic Home Owners Ass'n. v. Department of Housing & Urban Dev.*
284 F. Supp. 809 (E.D. Pa. 1968) ....................................................................................... 23

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*
923 F. Supp. 1231 (N.D. Cal. 1995) .................................................................................... 13

iv

*Removable Media Solutions, Inc. v. AAR Mobility Sys.*
  2010 U.S. Dist. LEXIS 75871 (E.D. Cal. July 28, 2010) ........................................................ 15

*Semitool, Inc. v. Tokyo Electron Am.*
  208 F.R.D. 273 (N.D. Cal. 2002) .................................................................................. 18, 19

*Shepherd v. ABC*
  62 F.3d 1469 (D.C. Cir. 1995) ............................................................................................ 21

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) ............................................................................................ 10

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
  240 F.3d 832 (9th Cir. Cal. 2001) ....................................................................................... 16

*Taylor v. Chiang*
  2007 U.S. Dist. LEXIS 43711 (E.D. Cal. June 1, 2007) ........................................................ 23

*Think Village-Kiwi, LLC v. Adobe Sys., Inc.*
  2009 U.S. Dist. LEXIS 32450, 2009 WL 902337 ................................................................. 15

*TMX Funding, Inc. v. Impero Techs., Inc.*
  2010 U.S. Dist. LEXIS 37064 (N.D. Cal. Mar. 17, 2010) ..................................................... 17

*Wachovia Sec., L.L.C. v. Stanton*
  571 F. Supp. 2d 1014 (N.D. Iowa 2008) ............................................................................... 20

*Wm. T. Thompson Co. v. General Nutrition Corp.*
  593 F. Supp. 1443 (C.D. Cal. 1984) ............................................................................... 21, 22

*Wyndham Resort Dev. Corp. v. Bingham*
  2010 U.S. Dist. LEXIS 80608 (E.D. Cal. July 8, 2010) .................................................... 17, 18

**CALIFORNIA CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*
  14 Cal. App. 3d 887 (Cal. Ct. App. 1971) ............................................................................. 15

*Ajaxo Inc. v. E\*Trade Group Inc.*
  135 Cal. App. 4th 21 (Cal. Ct. App. 2005) ............................................................................ 14

*American Credit Indem. Co. v. Sacks*
  213 Cal. App. 3d 622 (Cal. Ct. App. 1989) ................................................................. 14, 15, 16

*Courtesy Temporary Service, Inc. v. Camacho*
  222 Cal. App. 3d 1278 (Cal. Ct. App. 1990) .............................................................. 11, 12, 16

*FPI Development, Inc. v. Nakashima*
  231 Cal. App. 3d 367 (Cal. Ct. App. 1991) ........................................................................... 15

v

*GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.*
    83 Cal. App. 4th 409 (Cal. Ct. App. 2000) .............................................................................. 13

*Glue-Fold, Inc. v. Slautterback Corp.*
    82 Cal. App. 4th 1018 (Cal. Ct. App. 2000) ........................................................................... 12

*Greenly v. Cooper*
    77 Cal. App. 3d 382 (Cal. Ct. App. 1978) ....................................................................... 11, 16

*ITT Telecom Prods. Corp. v. Dooley*
    214 Cal. App. 3d 307 (Cal. Ct. App. 1989) ............................................................................ 15

*Morlife, Inc. v. Perry*
    56 Cal. App. 4th 1514 (Cal. Ct. App. 1997) .............................................................. 2, 9, 11, 18

*ReadyLink Healthcare v. Cotton*
    126 Cal. App. 4th 1006 (Cal. Ct. App. 2005) ......................................................................... 16

*Reeves v. Hanlon*
    33 Cal. 4th 1140 (Cal. 2004) .................................................................................................. 13

*Whyte v. Schlage Lock Co.*
    101 Cal. App.4th 1443 (Cal. Ct. App. 2002) .......................................................................... 12

### OTHER STATE CASES

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*
    2010 Del. Ch. LEXIS 15 (Del. Ch. Jan. 29, 2010).................................................................. 13

*Hydraulic Exchange & Repair, Inc. v. KM Specialty Pumps, Inc.*
    690 N.E.2d 782 (Ind. Ct. App. 1998)...................................................................................... 12

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*
    620 S.E.2d 222 (N.C. Ct. App. 2005) ..................................................................................... 13

### CALIFORNIA STATUTES

Cal. Bus. & Prof. Code §§ 17200, 17203 ................................................................................ 9, 16

Cal. Civ. Code § 3426.1 ...................................................................................................... 9, 13, 16

Cal. Civ. Code § 3426.1(a) ..................................................................................................... 10

Cal. Civ. Code § 3426.1(b) ..................................................................................................... 10

Cal. Civ. Code. § 3426.1(b)(1)................................................................................................ 14

Cal. Civ. Code § 3426.1(b)(1-2) ............................................................................................. 14

Cal. Civ. Code § 3426.1(b)(2)(A) ........................................................................................... 14

13217226.1

Cal. Civ. Code § 3426.1(b)(2)(B)(2) ................................................................................ 14, 15

Cal. Civ. Code § 3426.1(d) .................................................................................................. 10

Cal. Civ. Code § 3426.2 ........................................................................................................ 9

Cal. Civ. Code § 3426.8 ...................................................................................................... 12

California Business & Professions Code § 17203 ........................................................ 1, 9, 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(d)(1) ................................................................................................... 3, 18

Fed. R. Civ. P. 26(f) ........................................................................................................... 18

Fed. R. Civ. P. 65 ................................................................................................................. 1

Fed. R. Civ. P. 65(c) ..................................................................................................... 23, 24

James Pooley, *Trade Secrets* (2009) § 4.02[2][a] .................................................... 11, 12

Restatement (Third) of Unfair Competition § 39, comment .................................. 11, 13

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TRO; (2) OSC RE PRELIMINARY
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES

13217226.1

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    PRELIMINARY STATEMENT

Plaintiff Hertz Equipment Rental Corporation ("HERC") makes this emergency application based on Defendant Ramon Useda's egregious theft of HERC's confidential and trade secret pricing and customer information and Defendant Fred Kicenski's brazen use of HERC's confidential and trade secret employee compensation information.

HERC has discovered that during the 12 days before Defendant Ramon Useda ("Useda") abruptly resigned on September 24, 2010 to go to work (on the same day) for HERC competitor Sunstate Equipment Co., LLC ("Sunstate"), Useda emailed more than 20 documents containing confidential HERC pricing and customer information to his personal account at "ramon_useda@yahoo.com." One of those documents was HERC's pricing guide for Northern California, an extremely sensitive and confidential document. Useda sent it to himself the day before he resigned. Another item he sent that day was a document containing detailed national pricing information for governmental customers who come to HERC through the U.S. Communities Government Purchasing Alliance, a purchasing cooperative that negotiates on behalf of public agencies across the country. A week before he left, Useda collected the names of existing HERC customers in four HERC territories (none of which were Useda's territory), inserted the information into four separate emails, and sent the emails to himself at his work email address. Useda had no bona fide reason for digging up this information and collecting it in emails to himself. After Useda's departure, HERC discovered one of Useda's business cards from his new employer, Sunstate, in the door of a HERC customer that Useda had serviced while at HERC.

HERC also has discovered that Defendant Fred Kicenski ("Kicenski"), who abruptly left HERC on August 10, 2010 to go to work that day for Sunstate, has since been using HERC's confidential employee compensation information in his solicitations of HERC employees to leave HERC and join Sunstate.

HERC respectfully requests that this Court immediately issue temporary restraining orders ("TROs") enjoining Useda and Kicenski from further accessing, using, or disclosing HERC's

1

confidential and/or trade secret information, requiring them to preserve relevant evidence (including electronically stored information), and permitting HERC to engage in limited expedited discovery to allow it to determine the extent of their misconduct and the scope of harm they have wrongfully inflicted upon HERC in advance of the Preliminary Injunction hearing. The Court should grant this application because (1) HERC has a high likelihood of success on the merits, (2) HERC will suffer serious, irreparable competitive harm if Useda and Kicenski are not immediately stopped and dispossessed of HERC's confidential and/or trade secret information, (3) the balance of hardships favors granting it, and (4) granting it would advance the public interest.

*Merits.* On the merits, it is beyond dispute that Useda and Kicenski had no legal right to take, and that they have no legal right to use, HERC's confidential and/or trade secret information. There also is no question, based on the evidence now before the Court, that Useda took with him the confidential and trade secret pricing and customer information now before the Court. Nor is there any question that Kicenski has used HERC's confidential and trade secret compensation information to try to recruit HERC employees to leave HERC and work for Sunstate.

*Harm.* On the issue of harm, as established below, the imminent use of a trade secret constitutes irreparable harm as a matter of law.

*Balance of Hardships.* On the balance of hardships, the balance favors granting the TROs. HERC has a vital interest in protecting its confidential and trade secret information from competitors. At the same time, the requested TROs are narrowly drawn to stop Useda and Kicenski from further accessing, disclosing, or using HERC's confidential and/or trade secret information, and to require them to deliver all copies of HERC's confidential and/or trade secret information that they have in their possession, custody or control. They would not be prevented from continuing to work for Sunstate, from soliciting particular customers, or from engaging in business activities that do not involve the use of HERC's proprietary, confidential, or trade secret information.

*Public Interest.* The public interest favors granting the Motion because doing so will protect trade secrets and confidential information, which is "fundamental to the preservation of our free market economic system." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (Cal. Ct. App. 1997).

1    At the same time, there is no public interest in allowing a former employee who steals his employer's

2    trade secrets and confidential information to use them for personal competitive gain.

3           For these reasons, the Court should enter the requested TROs.

## II.    FACTS

**A.        HERC's Business Relies upon the Confidentiality of Trade Secrets and Customer Information, which HERC Takes Reasonable Measures to Protect.**

7           HERC is one of the nation's leading providers of heavy equipment and tools for rent and sale

8    to construction and industrial users, with approximately 243 branches in North America.

9    (Declaration of Mark Hobson ("Hobson Decl.") ¶ 2.) HERC began operations in 1965 and opened its

10   first rental location in the Bay Area in 1984. (*Id.*) HERC is ranked number four in North America by

11   revenue among equipment rental companies and has 14 locations in the Bay Area. (*Id.* ¶ 3.) Sunstate

12   is a HERC competitor, ranked number 17 in equipment rentals in North America by revenue.

13   Sunstate has three locations in the Bay Area. (*Id.*)

14          Part of what has made HERC so successful in the equipment rental business is its proprietary

15   information of what rental customers want, how the needs of customers vary among different

16   segments of the rental population, and what pricing strategies and actual prices are effective with

17   different types of customers and among specific customers. Over the years, HERC has invested

18   millions of dollars and thousands of hours developing, compiling and maintaining detailed

19   information on the needs of its customers and on sales and pricing strategies. HERC's proprietary

20   customer and pricing information gives the company a competitive advantage in the marketplace, and

21   HERC takes reasonable steps under the circumstances to keep this information confidential from the

22   public and its competitors. (*Id.* ¶ 4.)

23          HERC's success also is attributable in part to its development and retention of a highly

24   effective sales force. To help attract and retain its sales representatives, HERC has developed a

25   compensation system that rewards productive sales representatives very well. The amount of

26   compensation that HERC sales representatives earn is the subject of reasonable efforts by HERC to

27

28

3

1  protect against its disclosure to the public or to competitors, who could obtain economic value from

2  learning and using it to help recruit away HERC employees.  (*Id.* ¶ 5.)

3     Among the steps HERC takes to protect the confidentiality of its trade secrets and other

4  confidential and proprietary information are the use of confidentiality agreements with employees

5  such as Useda and Kicenski, and allowing only password-protected access to its computer and

6  database systems.  (*Id.* ¶ 6.)  As established below, both Useda and Kicenski were fully informed and

7  aware, through written agreements and policies they acknowledged having received, that HERC

8  business information available to them was confidential and proprietary and not to be used or

9  disclosed except in connection with legitimate HERC business.

10  **B. Useda and Kicenski Are Subject to Valid and Binding Agreements with HERC Prohibiting Disclosure or Use of HERC's Confidential and Trade Secret Information.**

11     In connection with their employment with HERC, both Useda and Kicenski executed a

12  confidentiality agreement entitled, Hertz Information Security Statement and Confidentiality

13  Agreement for Hertz Employees ("Confidentiality Agreement").  Under that agreement, Useda and

14  Kicenski each agreed, among other things, that:

16    • "I will use Hertz Confidential Information only for the performance of my responsibilities to Hertz."

17
18
19    • "I will not divulge Hertz Confidential Information to anyone, including Hertz employees, customers, contracted temporary workers or service providers, unless he or she requires the information to perform his or her services for Hertz or as part of his or her contractual relationship with Hertz."

20
21    • "I will comply with all Hertz information security policies and procedures, made available to me."

22
23    • "I understand my obligation to protect Hertz Confidential Information (as defined above) and will comply with all of Hertz's policies and procedures regarding the handling of Hertz Confidential Information."

24
25    • "Upon termination of my employment with Hertz, I will return all Hertz Confidential Information in my possession to Hertz and immediately cease

26  use of all Hertz computing resources and systems.  I further agree to continue to maintain the confidentiality of any Hertz Confidential

27  Information to which I had access during the course of my employment with Hertz."

28

4

1    (*Id.* ¶¶ 7-8.)

2        The Confidentiality Agreement defines "Hertz Confidential Information" as "the following

3    types of information: (i) information that is labeled, or that other Company policies and procedures

4    specifically classify as 'secret,' 'confidential' or 'proprietary,' including, but not limited to,

5    marketing data, financial results, employee information and operating data . . . and (iv) information

6    that could have a competitive impact on the Company or its organizational, technical or financial

7    position or which could cause damage to the Company or its prospective, current or former

8    customers, employees or reputation if disclosed either internally or outside the Company." (*Id.* ¶ 9.)

9        Further, Useda and Kicenski each acknowledged in writing having received company policies

10   protecting HERC's confidential information, including Procedure 1-43, entitled "Disclosure and

11   Acquisition of Confidential Information," and Procedure 1-70, entitled "Administering Information

12   Security." These Procedures expressly prohibit the wrongful conduct in which Useda and Kicenski

13   engaged. (*Id.* ¶ 10.) For example, Procedure 1-43 provides:

14         "4.    All employees must exercise care to avoid mishandling Hertz information

15       and must ensure that information is protected from loss, theft, modification or premature release.

16         "a.    Employees must not discuss Hertz information that has not

17       been made public by Hertz in the presence of persons outside Hertz unless specifically authorized.

18

19         "b.    Employees must not disclose Hertz confidential information in situations where it may be overheard by persons outside Hertz (i.e., at

20       trade shows, in public areas, etc.).

21         "c.    Employees must not hold discussions of Hertz confidential information outside Hertz, bypass Hertz security procedures to facilitate

22       access to such information, or keep such information beyond his/her term of employment without written permission from an authorized Hertz

23       manager. Hertz information must not be used for personal benefit."

24   (*Id.* ¶ 11.)

25

26       Likewise, Procedure 1-70 reiterates that "[a]ll employees must exercise care to avoid

27   mishandling of Hertz confidential information (as defined in this procedure) and must ensure such

28   classified information is protected from loss, theft, modification or premature release." This

5

Procedure further provides that users such as Useda and Kicenski must "[m]aintain confidentiality and integrity of Hertz data" and "[u]se the information only for the purpose intended by the owner." (*Id.* ¶ 12.)

HERC's Employee Handbook also states in plain language that employees are to maintain the confidentiality of HERC confidential information, including "financial" and "employee" information, and that they may not use it for personal gain or the benefit of others. Specifically, the Handbook states:

### CONFIDENTIAL INFORMATION

An employee may not disclose, without authorization, confidential information to any outside person. Similarly, an employee must respect the confidentiality of information received from customers, suppliers, vendors, subcontractors and others. An employee is prohibited from using confidential information gained through employment with the Company for personal gain or for the benefit of friends, relatives, or associates.

Confidential information includes proprietary, technical, business, financial, joint venture, customer and employee information that the Company treats as confidential or is not made available to the public. All confidential employee documents should be stored in a secure manner and disposed of in accordance with Company procedure. Similarly, all confidential information in the possession of an employee must be immediately returned to Hertz Equipment Rental Corporation should their employment end for any reason.

(*Id.* ¶ 13.)

### C. Useda Has Taken HERC's Confidential Information and Trade Secrets.

Useda was hired by HERC in November 2004 to work behind the customer counter in HERC's San Francisco location. From August 2007 until his departure in September 2010, Useda worked as a HERC sales representative. At the time of his departure, he worked out of HERC's Pacheco, California facility with a territory covering much of Contra Costa County. (*Id.* ¶ 14.)

On the morning of Friday, September 24, 2010, Useda telephoned his supervisor at HERC and resigned, effective that day. During the call, Useda stated that he was leaving to join Sunstate. (*Id.* ¶ 15) Following Useda's departure, HERC discovered that on September 23, 2010 – the day before his resignation – Useda had sent two emails with three attachments from his HERC email

6

1 account to an email address at "ramon_useda@yahoo.com," which obviously is Useda's personal

2 email address. (*Id.* ¶ 16.)

3      Two of the attachments to Useda's September 23rd email are files containing detailed

4 confidential and proprietary HERC pricing information. One contains 37 pages of itemized pricing

5 terms and rates for hundreds of equipment items that HERC provides to a particular

6 governmental/public institutional customer under the U.S. Communities Government Purchasing

7 Alliance program. The U.S. Communities Government Purchasing Alliance is a purchasing

8 cooperative that acts on behalf of public agencies across the country to negotiate reduced-cost

9 agreements for the provision of a broad line of goods and services from best-in-class national

10 suppliers. The document that Useda helped himself to provides critical insight into HERC's national

11 pricing strategies as a supplier-participant in the U.S. Communities program. The second attachment

12 contains 12 pages of itemized pricing terms and rates, along with key pricing strategy information,

13 that HERC sales representatives use to price equipment rentals throughout Northern California. The

14 third attachment contains a HERC price quote dated September 23, 2010 that was for a HERC

15 customer that Useda serviced. The second attachment contains 12 pages of itemized pricing terms

16 and rates, along with key pricing strategy information, that HERC sales representatives use to price

17 equipment rentals in Northern California. The third attachment contains a HERC price quote dated

18 September 23, 2010 that was for a HERC customer that Useda serviced. (*Id.* ¶ 17.)

19      HERC subsequently discovered that on September 12, 2010, Useda had used his HERC email

20 account to send to his personal email address ("ramon_useda@yahoo.com") an email with 19 files

21 attached, each of which contained confidential HERC pricing information. Seventeen of the files

22 contained confidential HERC pricing information for seventeen 17 HERC customers. The other two

23 files contained the same 37-page and 12-page detailed HERC pricing documents that Useda sent to

24 his personal email address on September 23, as discussed above. (*Id.* ¶ 23.)

25      In addition, HERC learned that Useda had used his HERC email account to send himself four

26 emails, at his HERC email address, on September 16, 2010 containing customer lists for the

27 territories of four HERC sales representatives who collectively cover San Francisco, San Mateo,

28

1   Oakland and Berkeley. (*Id.* ¶ 24.) The subject line of each of the four emails contains only a three-

2   digit number. The body of each contains a listing of HERC customers. In each case, the three-digit

3   number in the subject line is the number of the HERC sales representative assigned to the territory in

4   which the customers listed in the body of the email are located. Useda had no legitimate business

5   reason to gather this information, capture it in emails, and send it to himself. At the time Useda sent

6   the emails, he had no responsibility at HERC for any of the listed territories or customers. Rather, it

7   appears that the reason Useda was interested in the information is because it corresponds to Useda's

8   current territory at Sunstate. (*Id.* ¶ 24.)

9        The confidential pricing and customer information that Useda emailed to himself is protected

10   as a HERC trade secret. Useda had no legitimate business reason for having taken, for possessing, or

11   for using this confidential, proprietary and trade-secret information. As discussed below, use of this

12   information, or its disclosure to Sunstate, will cause irreparable harm to HERC and provide Sunstate

13   with an unfair advantage in the marketplace.

14   **D.**    **Kicenski Has Used HERC's Confidential Information and Trade Secrets.**

15        Defendant Fred Kicenski was hired as a sales representative by Big 4 Rents on or about

16   February 17, 1992. He became a HERC employee in 1998 when HERC purchased Big 4 Rents. He

17   was promoted to sales director in 2003, to area manager in 2004, and then to regional manager of

18   sales in 2007. During a downsizing in 2009, he was returned to an account manager position working

19   out of the Pacheco facility, with accounts in Contra Costa, Alameda, and Solano Counties. On

20   August 10, 2010, Kicenski gave notice that he was leaving that day to join Sunstate. (*Id.* ¶ 20.)

21        In the course of discovering the above-described Useda emails and attachments, HERC

22   learned that Defendant Kicenski has been contacting HERC sales representatives recently to try to

23   recruit them to Sunstate. (*Id.* ¶ 19.) In his recruiting discussions with at least one HERC sales

24   representative, Kicenski stated that he was the decisionmaker on hiring at Sunstate, that he knew the

25   individual's current compensation at HERC, and that Sunstate would be very competitive on pay if

26   the individual wished to come to Sunstate. (Declaration of James Herlitz ¶¶ 4-5.) Kicenski obtained

27   compensation information about HERC employees while he was employed at HERC. (Hobson Decl.

28

**8**

1 ¶ 21.)

2     After learning of Kicenski's use of confidential HERC compensation information as part of

3 his efforts to recruit HERC employees, HERC discovered that most emails in Kicenski's HERC

4 email account had been deleted. It appears that Kicenski was the one who deleted them. (*Id.* ¶ 22.)

5     All of the employee compensation data taken and used by Kicenski was confidential and

6 proprietary to HERC and contained or constituted HERC trade secrets. Kicenski's use of this

7 information will cause irreparable harm to HERC and provide Sunstate with an unfair advantage in

8 the marketplace, particularly in competing with HERC to retain a highly effective sales force.

9 Kicenski did not have any legitimate business reason for having taken, for possessing, or for using

10 this confidential, proprietary and trade-secret HERC information. (*Id.* ¶ 26.)

11 ### III. ARGUMENT

12 **A. Useda's and Kicenski's Breaches of Their Contractual Obligations and Their Violations of the Uniform Trade Secret Act and the Unfair Competition Law Entitle HERC to**
13 **Injunctive Relief as a Matter of Law.**

14     "[F]undamental to the preservation of our free market economic system is the concomitant

15 right to have the ingenuity and industry one invests in the success of a business or occupation

16 protected from the gratuitous use of that 'sweat of the brow' by others." *Morlife, Inc. v. Perry*,

17 56 Cal. App. 4th 1514, 1520 (Cal. Ct. App. 1997). California gave judicial teeth to this principle

18 through several legislative enactments, among them the California Uniform Trade Secret Act

19 ("UTSA"), Cal. Civ. Code §§ 3426.1 *et seq.*, and the California Unfair Competition Law ("UCL"),

20 Cal. Bus. & Prof. Code §§ 17200 *et seq.*

21     Under the UTSA, "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code

22 § 3426.2. Likewise, under the UCL, "[a]ny person who engages, has engaged, or proposes to engage

23 in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof.

24 Code § 17203. Federal courts will also enjoin breaches of confidentiality agreements when

25 irreparable harm may ensue. *See, e.g., Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*, 2008 U.S.

26 Dist. LEXIS 83076 (D.N.J. Oct. 17, 2008) (granting preliminary injunction prohibiting further

27 breaches of confidentiality portions of agency agreement); *Inter-Tel (Del.), Inc. v. Fulton Communs.*

28

1  *Tel. Co.*, 2007 U.S. Dist. LEXIS 43219, *18-19 (D. Ariz. June 12, 2007) (granting preliminary

2  injunction against breach of confidentiality provision of dealer agreement).

3      In the Ninth Circuit, "[t]he proper legal standard for preliminary injunctive relief requires a

4  party to demonstrate that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable

5  harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an

6  injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)

7  (quoting *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)).

8  **B.    HERC is Likely to Succeed on the Merits of Its Trade Secret Misappropriation Claim.**

9      The UTSA defines a "[t]rade secret" as:

10     information, including a <u>formula</u>, pattern, <u>compilation</u>, program, device, method,
       technique, or process, that:

11

12         (1) Derives independent <u>economic value</u>, actual or potential, <u>from not being
           generally known</u> to the public or to other persons who can obtain economic value from
13         its disclosure or use; and

14         (2) Is the subject of efforts that are <u>reasonable</u> under the circumstances to
           maintain its secrecy."
15

16  Cal. Civ. Code § 3426.1(d) (emphasis added).

17      The UTSA defines "[m]isappropriation," in relevant part, as:

18  (1) <u>Acquisition of a trade secret</u> of another by a person who knows or has reason to
    know that the trade secret was acquired <u>by improper means</u>; or
19

20  (2) <u>Disclosure or use of a trade secret</u> of another without express or implied consent
    by a person who:
21

22      (A) <u>Used improper means</u> to acquire knowledge of the trade secret; or

23      (B) At the time of disclosure or use, <u>knew or had reason to know</u> that his or her
        knowledge of the trade secret was:

24         . . .
           (ii) <u>Acquired under circumstances giving rise to a duty to maintain its secrecy</u> or
25         limit its use;

26  Cal. Civ. Code § 3426.1(b) (emphasis added). "Improper means," for the purposes of the above

27  definition of misappropriation, "includes <u>theft</u>, bribery, misrepresentation, <u>breach</u> or inducement of a

28

10

1  breach of a duty to maintain secrecy, or espionage through electronic or other means." Cal. Civ.

2  Code § 3426.1(a) (emphasis added).

3  **1.  HERC's Customer Information is a Protectable Trade Secret.**

4

5  "It is universally recognized that information about customers can represent the most valuable

   secrets a business owns." James Pooley, *Trade Secrets* (2009) § 4.02[2][a] (citing Restatement

6  (Third) of Unfair Competition § 42, comment f, and Milgrim, *Trade Secrets* § 1.09[7]).  Confidential

7  customer information acquired through lengthy and expensive efforts is entitled to protection under

8  the UTSA. *See, e.g., MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 521 (9th Cir.1993)

9  (customer database qualifies as a trade secret because it has potential economic value to allow a

10  competitor to direct its sales efforts to potential customers), *overruled in part on other grounds*, *eBay*

11  *Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, (2006); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514,

12  1521 (Cal. Ct. App. 1997) ("[W]here the employer has expended time and effort identifying

13  customers with particular needs or characteristics, courts will prohibit former employees from using

14  this information to capture a share of the market."); *Courtesy Temporary Service, Inc. v. Camacho,*

15  222 Cal. App. 3d 1278, 1288 (Cal. Ct. App. 1990) (holding that trial court's refusal to give trade

16  secret protection to confidential customer information was error).

17  Indeed, California law protected confidential customer information even before enactment of

18  the UTSA.  As the court in *Greenly v. Cooper,* 77 Cal. App. 3d 382 (Cal. Ct. App. 1978) explained:

19

20  Trade and business secrets and confidential information are the property of the
   employer and cannot be used by the employee for his own benefit. A list of

21  subscribers of a service, built up by ingenuity, time, labor and expense of the owner
   over a period of many years is property of the employer, a part of the good will of his

22  business and, in some instances, his entire business. Knowledge of such a list,
   acquired by an employee by reason of his employment, may not be used by the

23  employee as his own property or to his employer's prejudice.

24

25  *Id.* at 392; *see also Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1333-1334 (9th

   Cir.1980) (applying California law) (pre-UTSA case).

26

27

28

11

1

## 2. HERC's Pricing Information Is a Protectable Trade Secret.

Confidential information relating to HERC's "pricing, profit margins, costs of production, pricing concessions, promotional discounts, advertising allowances, volume rebates, marketing concessions, payment terms and rebate incentives," which is "used by [HERC] to price its products competitively," is likewise entitled to protection under the UTSA. *Whyte v. Schlage Lock Co.*, 101 Cal. App.4th 1443, 1455 (Cal. Ct. App. 2002). This type of information "has independent economic value because [HERC's] pricing policies would be valuable to a competitor to set prices which meet or undercut [HERC's]." *Id.*

Courts applying the California UTSA and other states' UTSAs[1] have held likewise. *See Courtesy Temporary Service, Inc.*, 222 Cal.App.3d at 1288 (holding that billing and markup rates were "irrefutably of commercial value" and hence constituted trade secrets); *see also PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *1 (N.D. Ill. Jan. 2, 1996) (enjoining disclosure or use of "information relating to . . . PepsiCo's pricing of beverage products under Illinois UTSA"); *Hydraulic Exchange & Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 785-86 (Ind. Ct. App. 1998) (holding that "customer and pricing information were trade secrets under the Indiana [UTSA]").

## 3. HERC's Employee Compensation Information is a Protectable Trade Secret.

As one treatise puts it, a trade secret can constitute "virtually anything you wouldn't want the competition to know." Pooley, *supra*, § 4.02[2]. HERC's employee compensation data falls within this category, because – as is evidenced by Kicenski's conduct here – the amount HERC pays its employees can be very helpful to a competitor trying to hire those employees away.

Courts have repeatedly recognized that employee compensation data constitutes trade secrets in appropriate circumstances. *See, e.g., Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 2010 U.S. Dist. LEXIS 92178, at *19 (E.D. Wash. July 20, 2010) (finding plaintiff likely to succeed where defendant

---

[1] Decisions interpreting the UTSA in other jurisdictions can be persuasive authority. *See* Cal. Civ. Code 3426.8 ("This title shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it."); *see also Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1026 (Cal. Ct. App. 2000) (noting that its holding regarding the UTSA's statute of limitations comported with the "construction which the Uniform Act has received in other jurisdictions").

13217226.1

1   used, *inter alia*, "confidential information that qualified as a trade secret, such as the employee's

2   compensation" to recruit plaintiff's employees, but denying preliminary injunction because "[a]ll

3   harm occurred a year ago" and "[a]ll damage is done"); *Sunbelt Rentals, Inc. v. Head & Engquist

4   Equip., L.L.C.*, 620 S.E.2d 222, 227 (N.C. Ct. App. 2005) (affirming trial court's determination that

5   certain confidential business information, including "employees' salaries," constituted protectable

6   trade secrets); *GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 428-429

7   (Cal. Ct. App. 2000) (whether confidential employee salary information constituted trade secret is

8   jury question; affirming jury's verdict that plaintiff failed to prove independent economic value at

9   trial), *overruled in part on other grounds*, *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (Cal. 2004).

10              **4.    HERC Took Reasonable Measures to Protect the Confidentiality of Its Trade
                        Secrets.**

11

12              "Information is protectable as a trade secret where the owner has taken 'efforts that are

13   *reasonable* under the circumstances to maintain its secrecy.'" *Religious Technology Center v.

14   Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995) (emphasis

15   in original) (quoting Cal. Civ. Code § 3426.1(d)(2)). "Reasonable efforts can include advising

16   employees of the existence of a trade secret, limiting access to the information on a 'need to know

17   basis,' [and/or] requiring employees to sign confidentiality agreements." *Id.* (internal quotes and

18   citations omitted). Protecting trade secret information through the use of computer passwords can

19   also constitute reasonable efforts to maintain secrecy. *See, e.g., Bank of Am., N.A. v. Lee*, 2008 U.S.

20   Dist. LEXIS 110410, at *11-12 (C.D. Cal. Sept. 22, 2008); *Great Am. Opportunities, Inc. v.

21   Cherrydale Fundraising, LLC*, 2010 Del. Ch. LEXIS 15, at *30, *75 (Del. Ch. Jan. 29, 2010)

22   (applying Delaware UTSA but noting that California UTSA had "no relevant deviations").

23              Significantly, "[e]fforts at maintaining secrecy <u>need not be extreme</u>, just reasonable under the

24   circumstances." *Religious Technology Center*, 923 F. Supp. at 1254 (emphasis added) (citing

25   Legislative Committee Comment-Senate, Cal. Civ. Code § 3426.1, at 147 (West Supp.1995)). A

26   plaintiff need prove only a level of secrecy sufficient to secure a competitive advantage. *See

27   Restatement (Third) of Unfair Competition § 39, comment f. Thus, the element of secrecy "is not

28

                                                            13

1 negated because defendant by an expenditure of effort <u>might</u> have collected the same information

2 from sources available to the public." *Clark v. Bunker*, 453 F.2d 1006, 1010 (9th Cir. 1972)

3 (emphasis added).

4 **5. Useda Misappropriated HERC's Trade Secrets.**

5 Trade secret misappropriation may be proved by circumstantial as well as direct evidence.

6 *See Droeger v Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir 1976); *see also Ajaxo Inc. v.*

7 *E\*Trade Group Inc.*, 135 Cal. App. 4th 21, 50-53 (Cal. Ct. App. 2005) (circumstantial evidence of

8 misappropriation can trump defendant's direct denials of wrongdoing).

9 Here, Useda engaged in both "acquisition" and "use" misappropriation. *See* Cal. Civ. Code §

10 3426.1(b)(1-2). (As discussed below, expedited discovery is necessary to determine whether further

11 misappropriation occurred, including by way of "disclosure.")

12 ▪ <u>Misappropriation by acquisition.</u> Useda "acqui[red]" HERC's pricing and customer

13 trade secrets by emailing them to himself shortly before his departure from

14 employment, when he "[knew] or ha[d] reason to know" that so doing constituted

15 "theft," a "breach . . . of [his] duty to maintain [the] secrecy" of such information, or

16 "espionage through electronic [] means." Cal. Civ. Code. § 3426.1(b)(1).

17 ▪ <u>Misappropriation by use.</u> Useda "use[d]" HERC's trade secrets after he "used

18 improper means," as described immediately above, to acquire them, Cal. Civ. Code §

19 3426.1(b)(2)(A), and when he "knew or had reason to know" that he had obtained

20 them under circumstances giving rise to a duty to maintain [their] secrecy or limit

21 [their] use." Cal. Civ. Code § 3426.1(b)(2)(B)(2). In the context of customer list trade

22 secrets, soliciting a former employer's customers is misappropriation by "use." *See*

23 *American Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 633 (Cal. Ct. App. 1989).

24 **6. Kicenski Misappropriated HERC's Trade Secrets.**

25 Likewise, Kicenski engaged in "use" misappropriation. *See* Cal. Civ. Code § 3426.1(b)(1-2).

26 (As discussed below, expedited discovery is necessary to determine whether further misappropriation

27 occurred, including by way of "disclosure.")

28

1

2       ▪  <u>Misappropriation by use.</u>  Kicenski "use[d]" HERC's trade secrets because he "knew

3           or had reason to know" that he had obtained them under circumstances giving rise to a

            duty to maintain [their] secrecy or limit [their] use." Cal. Civ. Code

4           § 3426.1(b)(2)(B)(2), and he then employed that information to solicit current HERC

5           employees to leave their positions to work for Sunstate. *Cf. American Credit Indem.*

6           *Co.*, 213 Cal. App. 3d at 633.

7   **C.    HERC Will Likely Prevail on Its Breach of Contract Claim.**

8           Given the overwhelming evidence already adduced, there can be little doubt that HERC will

9   also succeed on its claim for breach of contract. To do so, HERC must show the existence of a

10  contract, its terms which establish the obligation in issue, the breach of that obligation, and damages.

11  *See FPI Development, Inc. v. Nakashima*, 231 Cal. App. 3d 367, 383 (Cal. Ct. App. 1991); *Acoustics,*

12  *Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (Cal. Ct. App. 1971). Express confidential and

13  non-disclosure agreements are valid and enforceable in California, and breach of such agreement may

14  be pursued through a claim for breach of contract. *See, e.g., Removable Media Solutions, Inc. v. AAR*

15  *Mobility Sys.*, 2010 U.S. Dist. LEXIS 75871, at *10-13 (E.D. Cal. July 28, 2010); *JDS Uniphase*

16  *Corp. v. Jennings*, 473 F. Supp. 2d 697, 704 (E.D. Va. 2007) (applying California law); *Oculus*

17  *Innovative Sciences, Inc. v. Nofil Corp.*, 2007 U.S. Dist. LEXIS 86305, at *10-17 (N.D. Cal. Nov. 15,

18  2007); *ITT Telecom Prods. Corp. v. Dooley*, 214 Cal. App. 3d 307, 320 (Cal. Ct. App. 1989).

19          Significantly, HERC can succeed on its claim for breach of contract against Useda and

20  Kicenski based on the theft or unauthorized use of its confidential proprietary information,

21  irrespective of whether that information constitutes a "trade secret" under the UTSA. *See, e.g., Leatt*

22  *Corp. v. Innovative Safety Tech.*, LLC, 2010 U.S. Dist. LEXIS 71362, at *18-19 (S.D. Cal. July 15,

23  2010); *Phoenix Techs. Ltd. v. DeviceVM*, 2009 U.S. Dist. LEXIS 114996, 2009 WL 4723400, at **4-

24  5 (N.D. Cal. Dec. 8, 2009); *Think Village-Kiwi, LLC v. Adobe Sys., Inc.*, 2009 U.S. Dist. LEXIS

25  32450, 2009 WL 902337, at **2-3 (N.D. Cal. Apr. 1, 2009); *First Advantage Background Servs.*

26  *Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008).

27

28
                                              15

**D.** **HERC Will Likely Prevail on its Unfair Competition Claim.**

As a separate and independent basis for the requested TROs, HERC will likely prevail on its UCL claim. The UCL provides a right of action for any injury caused by "any unlawful, unfair, or fraudulent business act or practice," and, as noted, expressly permits injunctive relief. Cal. Bus. & Prof. Code §§ 17200, 17203. "[T]he cases are legion holding that a former employee's use of confidential information obtained from his former employer to compete with him and to solicit the business of his former employer's customers, is regarded as unfair competition." *Courtesy Temp. Serv.*, 222 Cal. App. 3d at 1292 (citing *Greenly*, 77 Cal. App. 3d at 391-92).

As with HERC's contract claim, HERC can succeed on its UCL claim against Useda and Kicenski based on the unauthorized use of its confidential proprietary information irrespective of whether that information constitutes a "trade secret" under the UTSA. *See Courtesy Temp. Serv.*, 222 Cal. App. 3d at 1291 ("[E]ven if [the employer's] customer list would not qualify as a "trade secret" under section 3426.1, the unfair and deceptive practices of employees in stealing [the employer's] customers should have been enjoined under Business and Professions Code section 17200 et seq."); *see also ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020-21 (Cal. Ct. App. 2005).

**E.** **HERC Will Suffer Irreparable Injury in the Absence of an Injunction.**

"In general, the imminent use of a trade secret constitutes irreparable harm." *Gallagher Benefits Services, Inc. v. De La Torre*, 2007 U.S. Dist. LEXIS 87139, at *14 (N.D. Cal. Nov. 20, 2007), *aff'd in part and rev'd in part on other grounds*, 2008 U.S. App. LEXIS 13665 (9th Cir. 2008) (citing *Campbell Soup Co v ConAgra, Inc.*, 977 F2d 86, 92-93 (3d Cir 1992)); *see also North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) ("[L]oss of trade secrets cannot be measured in money damages because [a] trade secret once lost is, of course, lost forever.") (internal quotes and citations omitted).

"This is particularly true when the trade secret is a customer list, for solicitation of plaintiff's customers by defendants cannot be remedied by money damages alone." *De La Torre*, 2007 U.S. Dist. LEXIS 87139, at *14 (citing *American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 637 (Cal. Ct. App. 1989); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. Cal. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly

16

supports a finding of the possibility of irreparable harm."); *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647, 661 (S.D.N.Y. 2001) ("[The former employee's] continued use of [the company's] confidential information, and [his] inevitable competition based thereon, will likely cause serious damage to [the company's] reputation and client base . . . . The measure of this damage is simply unquantifiable.").

## F. The Balance of Hardships Tips Decidedly in Favor of Granting TROs.

The balance of hardships likewise compels issuance of HERC's requested TROs. HERC has a vital interest in protecting its trade secret and confidential information – especially customer and pricing information – from its competitors. Neither Useda nor Kicenski has a right to use HERC's trade secret and confidential information for his own benefit or for Sunstate's benefit, let alone to HERC's competitive detriment. As discussed above, HERC will be irreparably harmed if Useda or Kicenski is permitted to disclose or continue using HERC's trade secret and confidential customer, pricing, and employee compensation information.

By contrast, the TROs sought by HERC would not prohibit Useda or Kicenski from doing anything that they are legally entitled to do. For example, HERC does not seek to restrain either of them from working for Sunstate, nor does HERC seek – at least at this time and upon the current record – to restrain either of them from soliciting any particular customers. Rather, HERC simply seeks to restrain Useda and Kicenski from further accessing, disclosing, or using its trade secret and confidential information.

Numerous California federal courts have held that where "[t]he injunctive relief sought [] is specific to the use of proprietary information" and "does not extend to [] business activities or to relationships that are not predicated upon proprietary, confidential, or trade secret information belonging to [the plaintiff]," then "the balance of hardships weighs in favor of" granting a TRO. *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 U.S. Dist. LEXIS 37064, at *25 (N.D. Cal. Mar. 17, 2010); *see also Wyndham Resort Dev. Corp. v. Bingham*, 2010 U.S. Dist. LEXIS 80608, at *18-19 (E.D. Cal. July 8, 2010) (same); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 U.S. Dist. LEXIS 3248, at *15 (C.D. Cal. Feb. 2, 2001) ("[T]he balance of hardships tips heavily in favor

17

1  of granting injunctive relief because an injunction merely prohibits Defendants from

2  misappropriating the trade secrets of [the former employer] and requires them to comply with the

3  reasonable terms of their Agreements [with the former employer].")

4  In light of this authority, the overwhelming evidence of Useda's and Kicenski's wrongdoing,

5  and the limited nature of the TROs sought, the balance of hardships tips decidedly in HERC's favor.

6  Accordingly, the requested TROs should be granted.

7  **G.    Granting the Requested TROs Would Advance the Public Interest.**

8  Granting temporary injunctive relief here will not adversely affect the public interest because

9  there is no public interest in allowing a former employee who steals a party's trade secret and

10  confidential information to use it for personal competitive gain.  Because protection of trade secrets is

11  "fundamental to the preservation of our free market economic system," *Morlife, Inc.*, 56 Cal. App.

12  4th at 1520, courts have routinely held that injunctions barring their unauthorized disclosure or use

13  are consistent with the public interest. *See, e.g., Wyndham Resort Dev. Corp. v. Bingham*, 2010 U.S.

14  Dist. LEXIS 80608, 19-20 (E.D. Cal. July 8, 2010); *Gable-Leigh, Inc. v. North Am. Miss*, 2001 U.S.

15  Dist. LEXIS 25614, at *69-70 (C.D. Cal. Apr. 9, 2001) ("[I]t is in the public interest that trade secret

16  customer lists be protected.") (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974)); *Merrill*

17  *Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 U.S. Dist. LEXIS 3248, at *16 (C.D. Cal. Feb. 2,

18  2001).

19  **H.    Limited Expedited Discovery Is Necessary to Determine the Full Scope of Useda's and
        Kicenski's Misconduct and the Resulting Harm in Advance of the Preliminary**
20  **Injunction Hearing.**

21  In advance of briefing and hearing on the Preliminary Injunction, Hertz requests that this

22  Court exercise its discretion and grant HERC the opportunity to conduct limited expedited discovery

23  necessary to establish the extent of Useda's and Kicesnki's theft and use of its trade secrets and

24  confidential information and the full scope of the resulting harm.  Courts have authority to permit

25  expedited discovery, prior to a Rule 26(f) conference, upon a showing of good cause. *See* Fed. R.

26  Civ. P. 26(d)(1); *Semitool, Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good

27  cause may be found where the need for expedited discovery, in consideration of the administration of

28

18

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE*, FOR (1) TRO; (2) OSC RE PRELIMINARY                    13217226.1
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES

1  justice, outweighs the prejudice to the responding party." *Semitool, Inc.*, 208 F.R.D. at 276.

2  "[C]ourts have recognized that good cause is frequently found in cases involving claims of

3  infringement and unfair competition." *Id.*

4  Here, HERC proposes to serve on Useda and Kicenski targeted sets of interrogatories and

5  document production that are narrowly tailored to the matters raised by HERC's complaint and to

6  protecting against further disclosure or use of HERC's trade secrets and confidential information.

7  HERC also proposes to take two depositions: those of Useda and Kicenski. HERC requests that the

8  Court order Useda and Kicenski to respond to the seven (7) proposed interrogatories and eight (8)

9  proposed document requests propounded to them respectively within five (5) business days, *i.e.,* by

10  November 9, 2010. HERC further requests that the two requested depositions go forward on two

11  separate dates agreeable to the parties, deponents, and their respective counsel, but no later than

12  November 12, 2010. HERC also proposes to serve a narrowly tailored document subpoena to Yahoo!

13  propounding three (3) document requests for file information concerning Useda's emails account, and

14  a narrow document subpoena to Sunstate propounding ten (10) document requests. The discovery

15  sought is not extensive and the proposed schedule is reasonable. Copies of the proposed discovery

16  are attached as Exhibits A through H to the accompanying Declaration of Matthew J. Frankel

17  ("Frankel Decl.").

18  The circumstances of this application underscore the need for this limited expedited

19  discovery. Although HERC is aware of the confidential information that Useda emailed to his

20  personal account and that it believes Kicenski took with him upon departure, it has no way of

21  determining, absent expedited discovery, whether either individual absconded with additional hard

22  copy documents or transferred other electronic files by means not already discovered. Nor, absent

23  expedited discovery, can HERC determine whether there are others to whom Useda or Kicenski has

24  disclosed HERC's confidential information or the circumstances of any such disclosure. Without this

25  information, HERC will be unable to protect its trade secrets and confidential information from

26  further misappropriation and exploitation, and precluded from identifying other parties who might

27  properly be joined as defendants. Further, in light of Useda's and Kicenski's surreptitious and

28

19

1  unlawful conduct to date, there is a strong possibility that they (or others acting in concert with them)

2  will dispose of key evidence before normal discovery can commence. Finally, absent expedited

3  discovery, HERC will not be able to establish the full measure of its harm from Useda's, Kicenski's,

4  and potentially others' wrongful conduct, thus prejudicing HERC's ability to carry its burden at the

5  Preliminary Injunction hearing.

6      These reasons are precisely why courts consistently grant requests for expedited discovery in

7  advance of Preliminary Injunction hearings on "infringement and unfair competition" claims,

8  especially those involving trade secrets. *See, e.g., KLA-Tencor Corp. v. Murphy*, 2010 U.S. Dist.

9  LEXIS 45932, at *3 (N.D. Cal. May 11, 2010) (noting that "the court granted plaintiff leave to take

10 expedited discovery, including oral depositions of the individual defendants" after issuing TRO

11 prohibiting use or disclosure of trade secrets and prior to preliminary injunction hearing on same);

12 *Grooms v. Legge*, 2009 U.S. Dist. LEXIS 21456, at *32-33 (S.D. Cal. Mar. 17, 2009) (granting

13 "expedited [] discovery in the form of Form Interrogatories; Requests for Identification and

14 Production of Documents; and up to three depositions prior to the preliminary injunction hearing" on

15 trade secret claims where "plaintiffs expressed concern that . . . customer lists [would be] lost without

16 discovery"); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1051 (N.D. Iowa 2008)

17 (denying TRO in trade secret misappropriation action but finding "it appropriate to grant [plaintiff's]

18 request for expedited discovery to help the parties prepare for a preliminary injunction hearing");

19 *Physicians Interactive v. Lathian Sys.*, 2003 U.S. Dist. LEXIS 22868, at *29-30 (E.D. Va. Dec. 5,

20 2003) (granting expedited discovery in connection with issuance of TRO and preliminary injunction

21 in trade secret misappropriation case involving, *inter alia*, customer lists); *MAI Sys. Corp. v. Peak*

22 *Computer*, 1992 U.S. Dist. LEXIS 21829, at *18 (C.D. Cal. Apr. 15, 1992) (noting that plaintiff

23 "sought, and th[e] Court granted, expedited discovery against [defendant] in the form of depositions

24 and document production" prior to preliminary injunction hearing on, *inter alia*, misappropriation of

25 trade secrets), *rev'd in part on other grounds*, 991 F.2d 511 (9th Cir. 1993).

26      Any potential prejudice to Useda and Kicenski is minimal, not least because the "requested

27 information is relevant and will be produced in the normal course of discovery." *Semitool, Inc.*, 208

28

1  F.R.D. at 276. No prejudice to Useda or Kicenski would result by requiring them to produce relevant

2  documents and answer relevant questions sooner rather than later. Moreover, the fact that HERC

3  possesses hard-and-fast evidence of misappropriation by Useda and Kicenski cuts against any claim

4  that HERC's expedited discovery requests are speculative or present an undue burden. To the

5  contrary, the "narrow" discovery requested by HERC is "not otherwise accessible [and] will

6  substantially contribute to moving this case forward." *Id.* at 277. Accordingly, HERC's request for

7  expedited discovery should be granted.

8      In addition to granting expedited discovery, HERC also respectfully requests that the Court

9  protect HERC's trade secrets and confidential information that may be disclosed as a result of such

10  discovery by entering the [Proposed] Protective Order, attached as Exhibit I to the Frankel

11  Declaration. This [Proposed] Protective Order is based on the two-tiered "Stipulated Protective

12  Order" available on the Court's website, with only a few changes to adapt to the current

13  circumstances,[2] and will facilitate the disclosure of information in this litigation and protect the

14  legitimate confidentiality interests of all parties and non-parties.

15  **I.    The Court Should Include Document Preservation Orders in the Proposed TROs.**

16      "[A] litigant . . . is under a duty to preserve what it knows, or reasonably should know, is

17  relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence,

18  [and/or] is reasonably likely to be requested during discovery." *Wm. T. Thompson Co. v. General*

19  *Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). However, "[a] sanction for failure to

20  preserve evidence is appropriate only when a party has consciously disregarded its obligation to do

21  so." *Shepherd v. ABC*, 62 F.3d 1469, 1481 (D.C. Cir. 1995). Accordingly, HERC respectfully

22  requests that the Court put Useda and Kicenski on express notice of their obligations under the law

23  through issuance of a document preservation order.

24      Courts routinely issue such orders in connection with granting temporary injunctive relief on

25  trade secret claims. *See, e.g., KLA-Tencor Corp. v. Murphy*, 2010 U.S. Dist. LEXIS 45932, at *3

26  _____

[2] HERC has adjusted the form on the Court's website to reflect that it is not being entered upon stipulation and to

27  streamline several provisions, including the provision for challenging confidentiality designations. These changes are
    reflected in the "red-line" attached as Exhibit J to the Frankel Declaration.

28

21

1 (N.D. Cal. May 11, 2010) (noting that previously-issued TRO "prohibit[ed] defendants from using []
2 trade secrets or destroying evidence and require[ed] defendants to preserve electronic evidence");
3 *Hypro, LLC v. Reser*, 2004 U.S. Dist. LEXIS 25191, at *22 (D. Minn. 2004) (issuing TRO ordering
4 parties to "preserve during the pendency of this litigation all evidence, including electronic
5 documents and electronic mail on their business or personal computers, containing any reference to
6 the Plaintiff or Defendants' activities regarding matters identified or referred to in the Complaint,"
7 and not to "erase, alter, modify, or destroy such evidence"; *see also ABT, Inc. v. Juszczyk*, 2010 U.S.
8 Dist. LEXIS 91613, 33-34 (D.N.C. 2010) (granting preliminary injunction on, *inter alia*, trade secret
9 claims with language requiring defendants to "preserve all data currently stored on computers over
10 which they have possession, custody or control, and personal digital assistant or mobile telephone,
11 including any information stored on backup media, and produce to an independent computer forensic
12 expert the computer hard drives or other hardware from any and all computers which currently stores
13 or has stored [plaintiff's] confidential information and trade secrets").

14     Such an order is necessary and appropriate to ensure that Useda and Kicenski preserve all
15 relevant evidence and are aware of the possibility of sanctions should they fail to do so. It is also
16 necessary and appropriate given that there are limits to what HERC can ascertain through its own
17 investigation, and a thorough review of <u>all</u> information bearing on Useda's and Kicenski's
18 misconduct is necessary in advance of the Preliminary Injunction hearing. In light of their
19 surreptitious and unlawful conduct to date, HERC reasonably fears that Useda and Kicenski will
20 dispose of critical evidence absent timely and clear direction otherwise from the Court. Further,
21 considering that Useda and Kicenski are "under a duty to preserve" relevant documents, *Wm. T.
22 Thompson Co.*, 593 F. Supp. at 1455, issuance of such an order would not result in any prejudice to
23 them. Accordingly, HERC respectfully requests that the Court issue a document preservation order
24 to ensure the integrity of this litigation.

25 **J.     A Bond Is Not Required.**

26     The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as
27 to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)

28

1   (internal quotes omitted) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

2   "The district court may dispense with the filing of a bond when it concludes there is no realistic

3   likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

4        This Court may also dispense with a bond when there is no evidentiary basis for the proper

5   amount of the bond. "Absent any measure of the amount [the party seeking the injunction] should

6   provide in a bond, it might well be an abuse of [the Court's] discretion . . . to arbitrarily set some

7   figure." *Bass v. Richardson*, 338 F. Supp. 478, 491 (S.D.N.Y. 1971); *see also Taylor v. Chiang*,

8   2007 U.S. Dist. LEXIS 43711, at *14 n.4 (E.D. Cal. June 1, 2007). It is not the court's "function to

9   establish sums which are wholly speculative." *Bass*, 338 F. Supp. at 491. Critically, "[a]ttorneys'

10   fees and legal expenses spent by the injured party in resisting or appealing the injunction are not . . .

11   items to be included in the determination of the amount of the bond." *Powelton Civic Home Owners*

12   *Ass'n. v. Department of Housing & Urban Dev.*, 284 F. Supp. 809, 840 (E.D. Pa. 1968); *see also*

13   *Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ("Attorney's fees are not recoverable as damages

14   in an action on an injunction bond.").

15        Because HERC's proposed TROs seek only that Useda and Kicenski cease and desist from

16   engaging in unlawful activities – *i.e.*, the unauthorized use of HERC's trade secrets and confidential

17   information – they cannot argue that they will suffer any damage as a result of a TRO. In similar

18   circumstances, other courts have dispensed with the bond entirely, or required a nominal amount.

19   *See, e.g., Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 980 (N.D. Iowa 2006)

20   (enjoining disclosure of trade secrets by defendant and misappropriation of those secrets by

21   defendant's new employer, but refusing to enjoin defendant's continued employment with new

22   employer; required nominal bond of $1); *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1464 (M.D.N.C.

23   1996) (requiring posting of $5,000 bond where preliminary injunction prohibited plaintiff's former

24   employee from discussing certain trade secret information with former employee's new employer).

25   Here, because no damages could possibly result from the injunctive relief sought by HERC, no bond

26   is necessary under Rule 65(c). *See Jorgensen*, 320 F.3d at 919.

27

28

1    DATED: November 2, 2010           Respectfully submitted,

2                                            NIXON PEABODY LLP

3

4                                        By:

5                                          Charles M. Dyke
                                         Attorneys for Plaintiff

6                                          HERTZ EQUIPMENT RENTAL
                                         CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION, *EX PARTE,* FOR (1) TRO; (2) OSC RE PRELIMINARY          13217226.1
INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES